## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL J. LINDELL., et al.,** | |
| **Plaintiffs,** | **Civil Action No.** |
| **v.** | **1:23-mc-78-ACR-MAU** |
| **OFFICE OF DIRECTOR OF NATIONAL INTELLIGENCE,** | [D. Minn. Case No. 22-cv-0098-WMWJFD] |
| **Defendant.** | |

### REPORT AND RECOMMENDATION

My Pillow, Inc. and Michael Lindell ("Lindell"), Defendants in the underlying action in Minnesota, move to compel third party John Negroponte ("Negroponte") to comply with a deposition subpoena.  ECF No. 1.[1]  The United States Office of the Director of National Intelligence, on behalf of Negroponte, opposes Lindell's Motion and contests the subpoena.  ECF No. 7.[2]  For the reasons set forth below, this Court recommends that Lindell's Motion be **DENIED**.[3]

---

[1]      Lindell moved to compel Negroponte and Carlotta Wells to comply with deposition subpoenas in another election-related defamation lawsuit, *Dominion et al v. MyPillow et al*, pending in this Court.  *See* Case No. 21-cv-445.  The briefing on Lindell's Motion in this case is nearly identical to the briefing in the *Dominion* case.  ECF Nos. 183; 191; 193 in D.D.C. 21-cv-445.  This Court denied Lindell's Motions in the *Dominion* case for the same reasons it recommends that the District Court deny this Motion.  ECF Nos. 218; 219 in 21-cv-445.  Unless otherwise specified, the Court cites to docket entries in D.D.C. 23-mc-78 and page numbers in ECF headers.

[2]      The Court also considered Lindell's Reply brief at ECF No. 11.

[3]      The District Judge presiding over this case referred the Motion to this Court on December 18, 2023.  12/18/2023 Minute Order.  Because resolution of this Motion would dispose of this case, the Court issues a Report and Recommendation pursuant to LCvR 72.3(a)(3).

**BACKGROUND**

**Smartmatic Litigation**

Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited ("Smartmatic") have sued Lindell for defamation and deceptive trade practices related to statements Lindell allegedly made regarding the 2020 U.S. presidential election.  ECF No. 6 (citing Am. Compl., ECF No. 125 in D. Minn. Case No. 22-cv-0098). Smartmatic alleges that Lindell made defamatory statements across multiple platforms and falsely claimed that, through its voting machines, Smartmatic manipulated votes to steal the election.  *Id*. According to Smartmatic, Lindell intentionally spread this false information to "sell pillows."  *Id*.

**Information Lindell Allegedly Heard During the 2020 U.S. Election**

Lindell defends against this suit, in part, by arguing his statements were true.  ECF No. 8-11 at 2.[4]  He claims that he received information from other people, and then directly from Dennis Montgomery ("Montgomery"), that led him to make these statements.  ECF No. 1-1 at 2 (referencing Lindell Decl. ¶¶ 2, 3).  According to Lindell, Montgomery had provided computer programming services many years ago to the U.S. government through the contract Montgomery's company, eTreppid, had with the federal government.  *Id*.  Lindell claims he heard that "Montgomery had developed and used computer software that allowed the federal government to monitor internet communications and to manipulate computerized voting machines used in foreign countries."  *Id.*  Lindell further alleges that he "heard that Montgomery's election-manipulating software was obtained by persons in China, and that Montgomery obtained copies of internet

---

[4]     Lindell filed hundreds of pages of exhibits as a separate filing attached to his Reply brief on September 21, 2023.  ECF No. 8.  Lindell did not include any of these attachments with his initial Motion, even though he clearly references what he intended to attach as exhibits throughout his Motion.  Despite this error, the Court considers these exhibits to the extent they are relevant to his underlying Motion.

2

transmissions showing the software was used by persons in China to change votes in the 2020 presidential election." *Id.* According to Lindell, his knowledge about Montgomery's "history of working for the United States government was one of the reasons [he] believed the information he learned about Montgomery." *Id.* Lindell asserts that he reasonably relied on this information in making the statements Smartmatic claims are defamatory. ECF No. 7 at 5.

**eTreppid Litigation**

In 2006, Montgomery sued eTreppid and his business partner over disputes they had about the company. ECF No. 6 at 6; *see generally* Compl. (ECF No. 1) in *Montgomery v. eTreppid Technologies, Inc.*, No. 3:06-cv-0056 (D. Nev.) ("*eTreppid* Litigation"). Montgomery brought claims including copyright infringement, breach of contract, breach of fiduciary duty, fraud and conversion. *Id.* Montgomery also asserted claims against the U.S. Department of Defense ("DOD"). *Id.* at 7 (citing Am. Compl. in *eTreppid*, 6-cv-56; ECF No. 7 ¶¶ 68–74). Specifically, Montgomery sought declaratory relief that would have allowed him to disclose certain information in the *eTreppid* Litigation notwithstanding him having signed a classified information nondisclosure agreement with the DOD. *Id.* at 7–8. The court ultimately dismissed Montgomery's claims against the United States. *Id.*

While the United States' motion to dismiss was pending, it sought a protective order prohibiting disclosure of the existence of any relationship between the *eTreppid* Parties (which included Montgomery) and the U.S. government or any intelligence agency interest in or use of source code over which eTreppid claimed ownership. *Id.* (citing ECF No. 83-1 in *eTreppid*, 6-cv-56). The court granted the government's motion for protective order. *Id.* (citing ECF No. 253 in *eTreppid*, 6-cv-56).

3

**Negroponte**

Negroponte is the former Director of National Intelligence ("DNI").  ECF No. 6 at 8–9.
Until the subpoena at issue, Negroponte was not involved in the *Smartmatic* Litigation.  None of
the statements at issue in Smartmatic's Complaint reference Negroponte.  *See generally* Am.
Compl.

Negroponte was involved in the *eTreppid* Litigation on behalf of the United States.  ECF
Nos. 1; 6; 7.  In support of its motion for protective order, the United States submitted a declaration
from Negroponte setting forth the foundation for the government's assertion of the state secrets
privilege.  ECF No. 6 at 7 (referring to ECF No. 83-2 ("DNI Negroponte Decl.")).  Lindell does
not allege that Negroponte had any ongoing contact with Montgomery after Negroponte's limited
involvement in the *eTreppid* Litigation.  ECF No. 1-1 at 4–5.

**The Subpoena at Issue**

On July 13, 2023, Lindell served a subpoena on Negroponte to provide deposition
testimony in the *Smartmatic* litigation.  ECF No. 8-8 at 2.  Lindell seeks testimony from
Negroponte that:

> (1) Mr. Montgomery participated in the development of software technology that
> can be used to penetrate electronic election equipment and manipulate vote totals;
> (2) this technology was tested and found to work;
> (3) the technology was developed and was operational prior to 2020;
> (4) the technology at some point passed into the possession of individuals outside
> the CIA; and
> (5) the technology was used to manipulate elections outside the United States prior
> to 2020.

*Id.* at 8.

The United States objected based on the Office of the Director of National Intelligence's
*Touhy* regulations, asserting that: (1) the subpoena does not give Negroponte sufficient time to
comply; (2) the requested testimony is irrelevant and not proportional to the needs of the case; (3)

"[n]o extraordinary circumstances exist[ed] to compel the deposition of an apex official"; (4) the requested testimony is not authorized to the extent it seeks privileged information; and (5) the requested testimony would pose an undue burden.  ECF No. 8-10.[5]

**LEGAL STANDARD**

Rule 45 governs third party subpoenas.  Fed. R. Civ. P. 45.  When a third party lodges timely objections to a subpoena, the serving party "may move the court for the district where compliance is required for an order compelling production or inspection."  Fed. R. Civ. P. 45(d)(2)(B).  When considering a motion to compel under Rule 45, a court "must first consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation, as defined by Rule 26(b)(1)."  *See BuzzFeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018); *Hesco Bastion Ltd. v. Greenburg Traurig LLP*, Case No. 09-cv-0357, 2009 WL 5216932, *3 (D.D.C. Dec. 23, 2009) ("No requirement of relevance is included in the text of Rule 45; however, it is settled that a subpoena is limited in scope by Rule 26(b)(1).").  The serving party bears the burden to establish relevance.  *See Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 9 (D.D.C. 2007).  If relevance is established, the Court considers objections to the subpoena under Rule 45, including whether the subpoena requests privileged material or would cause an undue burden on the third party.  *See Buzzfeed*, 318 F. Supp. at 356.  It falls on the objecting party to show that compliance would pose an undue burden.  *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984).

Federal Rule of Civil Procedure 26(b) allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ.

---

[5]     The ODNI considered Lindell's subpoena pursuant to 5 U.S.C. § 301 (general housekeeping statute), *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), and its *Touhy* regulations set forth at 32 C.F.R. Part 1703.  ECF No. 8-10.

P. 26(b)(1).  Pursuant to the 2015 amendments to Rule 26, discovery must be both relevant and proportional based on a number of enumerated factors.[6]  This Court has recognized that "relevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense."  *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).[7]  That said, "[w]hile the standard of relevancy [in discovery] is a liberal one, it is not so liberal as to allow a party 'to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.'"  *Alexander v. F.B.I.*, 186 F.R.D. 12, 19 (D.D.C. 1998) (quoting *In re Fontaine*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975)) (alteration in original).

In addition to Rule 26's relevance requirement, a court considering a motion to compel under Rule 45 must also deny a motion if the subpoena "call[s] for privileged matter or would cause an undue burden."  *Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007).  According to Rule 26(b), whether discovery poses an undue burden depends on whether the discovery is "unreasonably cumulative or duplicative"; "obtainable from another source that is more convenient, less burdensome, or less expensive"; and whether the "burden or expense of the proposed discovery outweighs the likely benefit, taking into account the needs of the case, the

---

[6]   This includes: "(1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the importance of the discovery in resolving the issues; and (5) whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2).

[7]   As the Advisory Committee noted, "[t]he change does not place on the party seeking discovery the burden of addressing all proportionality consideration" and "the parties' responsibilities would remain" as they had been prior to the 2015 amendment.  Fed. R. Civ. P. 26 Advisory Committee Note; *see also Goodwin v. District of Columbia*, Case No. 21-cv-806, 2021 WL 1978795 (D.D.C. May 18, 2021) (citing Fed. R. Evid. 401) ("Yet, information may qualify as relevant . . . if it has 'any tendency to make a fact more or less probable than it would be without the evidence' and 'the fact is of consequence in determining the action.'").

amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1)–(2); *see also Watts*, 482 F.3d at 509.

Federal agencies have authority to enact regulations for responding to a subpoena served on a federal official.  5 U.S.C. § 301; *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) (upholding the Attorney General's authority to "prescribe regulations not inconsistent with law for the custody, use, and preservation of the records, papers, and property pertaining to the Department of Justice"); *see e.g.*, *Agility Public Warehousing Company K.S.C.P. v. U.S. Department of Defense*, 246 F. Supp. 3d 34, 41 (D.D.C. 2017) (describing agency authority to enact *Touhy* regulations).[8]  Although an agency's *Touhy* regulations are relevant for an agency to determine how to respond to a subpoena, those regulations do not "alter the procedures set forth in the Federal Rules of Civil Procedure or . . . preclude the production of documents 'that are relevant to a judicial proceeding.'"  *S.E.C. v. Selden*, 484 F. Supp. 2d 105, 107 (D.D.C. 2007) (*citing Touhy*, 340 U.S. at 468).  Rules 45 and 26 give reviewing courts the "tools . . . [to] adequately protect both the litigant's right to evidence and the 'government's interest in not being used as a speakers' bureau for private litigants.'"  *Watts*, 482 F.3d at 509 (quoting *Exxon Shipping Co. v. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

---

[8]     As opposed to state court litigants, federal court litigants "can seek to obtain the production of documents from a federal agency by means of a federal subpoena."  *Houston Business J., Inc. v. Office of the Comptroller of Currency, U.S. Dep't of Treasury*, 86 F.3d 1208, 1212 (D.C. Cir. 1996).

**DISCUSSION**

**I.      Lindell Fails to Show the Testimony is Relevant**

Lindell argues that the testimony he seeks from Negroponte is relevant because "information about Montgomery's past and work for the federal government tends to support the statements Lindell made." ECF No. 1-1 at 5. Specifically, Lindell argues that "whether [his] statements concerning Montgomery and the 2020 election are true, whether [he] believed what he said, and whether it was 'inherently improbable' for him to believe this" will be important questions in this case. *Id.* at 7.

Lindell does not argue that there is a series of interactions between Negroponte and Montgomery stemming from the *eTreppid* Litigation. ECF No. 1-1 at 8–9. Therefore, Lindell's argument rests entirely on Negroponte signing a declaration in 2006 based on his "careful and actual personal consideration" of information related to eTreppid's work for the Government. *Id.* at 4. Again, Lindell asserts that this testimony is relevant because "Lindell relied on information about Montgomery [sic] actions at that time [16 years ago during the *eTreppid* Litigation], and now seeks admissible evidence showing that the information he received was accurate." *Id.*

The United States argues that Lindell's subpoena to Negroponte is "irrelevant on its face" as Lindell does not seek to compel any information bearing on the truth or reasonableness of the actual alleged defamatory statements in this case. ECF No. 6 at 11. According to the United States, Lindell does not assert that Negroponte has any personal knowledge of the "truth or reasonableness of the alleged defamatory statements in *Smartmatic*." *Id.* at 10. The United States argues that the Court should draw the "'crucial distinction' between permitting discovery to 'flesh out a pattern of facts already known' and 'the illegitimacy of permitting discovery against a third party premised on an unfounded suspicion' as here." *Id.* at 11 (quoting *In re Motion to Compel*

*Compliance with Subpoena Direct to Dep't of Veterans Affairs*, 257 F.R.D. 12, 17 (D.D.C. 2009)). As such, the United States argues that the requested discovery would delve into "the shadow zones of relevancy and . . . explore matter which does not presently appear germane on a theory that it may conceivably become so." *Id.* at 10 (citing *St. John v. Napolitano*, 274 F.R.D. 12, 16 (D.D.C. Mar. 31, 2011)).

The Court agrees with the United States. The testimony that Lindell seeks from Negroponte is not relevant to a claim or defense in the *Smartmatic* Litigation. First, as Lindell does not dispute, Negroponte does not have any personal or direct knowledge regarding the allegedly defamatory statements at issue. At most, because Lindell claims that he made his statements about Smartmatic in part based on what he "heard" from and about Montgomery related to Montgomery's work with the U.S. Government, the only potential knowledge that Negroponte possesses is information from almost twenty years ago about Montgomery's work with the U.S. Government in an unrelated matter. ECF No. 1-1. This information would, according to Lindell, corroborate or help make his reliance on information he heard from and about Montgomery more reasonable. Setting aside the fact that Negroponte's role in this case is attenuated at best, a central problem with Lindell's theory is that he does not claim that he actually relied on the information he now seeks back when he made statements about Smartmatic during the 2020 U.S. election.

Put another way, testimony from Negroponte about why the United States sought and enforced a protective order in unrelated litigation almost 20 years ago is irrelevant to this case because it is not the actual basis for Lindell's statements about Smartmatic vis-à-vis the 2020 election. That Lindell did not seek to verify the information he "received" and "heard" about Montgomery's work with the U.S. Government when making his statements related to the 2020 U.S. election does not now make that information relevant. *See e.g.*, *Alexander*, 186 F.R.D. at 20

9

(finding irrelevant discovery requests for information related to the White House recording system that went beyond how individuals may have been able to enter the White House to probing "technical and operational subject matter and capabilities of White House security.").  Nor does Lindell provide any authority for the proposition that he can rely on information discovered years after he made the statements to justify whether his conduct was "reasonable" under the circumstances as they existed at the time he made the statements.  In sum, Lindell has failed to establish the requested discovery is relevant to any claim or defense.

## II.    The Deposition Subpoena Imposes an Undue Burden on Negroponte

Even assuming the information Lindell seeks to compel were relevant, the United States has shown that the subpoena would pose an undue burden and should, therefore, be quashed.

The United States argues that the possible benefit of Negroponte's testimony to Lindell's case is highly speculative and is strongly outweighed by the burden of providing such testimony; the testimony would be cumulative of information already on the public record; would duplicate any testimony from Montgomery; and can be obtained much more conveniently from Montgomery himself.  ECF No. 6 at 12–16.  Additionally, the United States objects to the subpoena to the extent it would require Negroponte to testify about information protected by executive privilege, the state secrets privilege, attorney-client privilege, and the attorney work product protection.  *Id.* at 16–18.  The United States argues that, despite Lindell's assurances that the subpoena does not seek privileged information, many of the topics Lindell outlined in the subpoena go to the very heart of information that the federal court protected in the *eTreppid* protective order.  *Id.* at 16; 8-8 at 7–8 (asserting that "Mr. Negroponte possess[es] knowledge of Mr. Montgomery's activities at eTreppid performed in connection with the CIA" and seeking testimony including that these

activities include "(1) . . . development of software technology that can be used to penetrate electronic election equipment and manipulate vote totals.").

Lindell makes a number of arguments in opposition.  He claims that the subpoena would not pose an undue burden because the discovery sought is proportional to the needs of the case; Negroponte has personal knowledge of the issues; and there is no more convenient source to obtain the information.  ECF No. 1-1 at 8–11.  According to Lindell, this deposition is proportional because it is a "single deposition" and "the stakes of the case are high."  *Id.* at 9.  Lindell points out that Smartmatic seeks $2 billion in damages in the underlying case.  *Id.*  Lindell asserts that Negroponte's declaration in the *eTreppid* Litigation confirms he has knowledge about the topics in the subpoena.  *Id.*  He further argues that there is no better source to testify about Negroponte's actions in the *eTreppid* Litigation besides himself.  *Id.*; ECF No. 7 at 9.  Additionally, Lindell argues that, because the United States previously took the position that the *eTreppid* protective order was irrelevant to the *Smartmatic* Litigation, the government can no longer object to the subpoena on the grounds it seeks privileged information.  ECF No. 7 at 11.

The United States has met its burden to show that compliance with the subpoena would pose an undue burden on Negroponte.  As noted above, the information that Lindell relied on to make his statements during the 2020 U.S. election is known to Lindell and was known to Lindell at the time of the 2020 U.S. election.  To the extent anything Lindell heard from or about individuals including Montgomery is relevant to the determination of whether Lindell's statements were reasonable, any relevant testimony would be from Montgomery and the other individuals who provided information about Montgomery to Lindell—not U.S. Government officials who were involved in the unrelated *eTreppid* Litigation nearly two decades ago.  *See Watts*, 482 F.3d at 509 ("[D]iscovery under Rules 26 and 45 must properly accommodate the government's serious

and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations.") (internal citations omitted).  Therefore, Montgomery and the other sources of the information, not Negroponte, are the most convenient source for this information.  In fact, Lindell has access to and has already elicited statements from Montgomery about his alleged work for the U.S. Government many years ago.  ECF No. 8-11 (Lindell Decl.); ECF No. 8-2 (Montgomery 08/19/2022 Decl.).

Moreover, because Lindell asserts that he only seeks non-privileged and public information from Negroponte, any testimony he provides would unnecessarily duplicate the information on which Lindell actually relied to make statements about Smartmatic during the election.[9] Necessarily, the value that Lindell placed on information he gained from and about Montgomery and any alleged work Montgomery did with the U.S. Government depended on information Lindell learned from sources other than Negroponte.  That, alone, provides the benchmark against which the reasonableness of his reliance and statements should be measured, not any post-hoc information Lindell may seek from Negroponte to now bolster or corroborate his reliance many years ago.  Accordingly, the testimony Lindell seeks simply does not warrant the undue burden on a government official to sit for a deposition about unrelated litigation from 2006 which implicates privileged information, including information potentially subject to the state secrets privilege.

**CONCLUSION**

For the reasons set forth above, the Court recommends that Lindell's Motion to compel testimony from third party Negroponte be **DENIED**.

---

[9]   Because Lindell repeatedly assures that he only seeks *non-privileged* information, and because the Court concludes that the testimony Lindell seeks is irrelevant and poses an undue burden, the Court does not separately reach the question of whether such testimony would be shielded by privilege.  ECF No. 1-1 at 10.

## <u>REVIEW BY THE DISTRICT COURT</u>

The parties are advised that under the provisions of Local Civil Rule 72.3(b), any party who objects to a Report and Recommendation must file a written objection with the Clerk of Court within 14 days of the party's receipt of the Report and Recommendation.  The written objections must specifically identify the portion of the report or recommendation to which objection is made and the basis for such objections.  Failure to file timely objections to the findings and recommendations set forth in this Report may waive that party's right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985).

Date: August 22, 2024

                                 _____
                                 MOXILA A. UPADHYAYA
                                 United States Magistrate Judge